FILED
IN OPEN COURT

FEB - 3 2011

CLERK, U.S. DISTRICT COURT
ALEXANDRIA, VIRGINIA

IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | CRIMINAL NO. 1:11CR61 |
| v. | ) | |
| | ) | <u>Count 1</u>: |
| BRIAN W. YOUNG, | ) | Conspiracy to Commit Money Laundering |
| | ) | 18 U.S.C. § 1956(h) |
| Defendant. | ) | |
| | ) | <u>Counts 2-4</u>: |
| | ) | Money Laundering |
| | ) | 18 U.S.C. § 1956(a)(1)(B)(i) |
| | ) | |
| | ) | <u>Forfeiture</u> |
| | ) | 21 U.S.C. § 853 |
| | ) | 18 U.S.C. § 982 |
| | ) | |

**FEBRUARY 2011 TERM - AT ALEXANDRIA**

**INDICTMENT**

THE GRAND JURY CHARGES THAT:

<u>COUNT ONE</u>

<u>Conspiracy to Commit Money Laundering</u>

Beginning in and around 2005, and continuing through in and around December 2008, in

the Eastern District of Virginia and elsewhere, the defendant, BRIAN W. YOUNG, did

unlawfully and knowingly combine, conspire, confederate, and agree with William H. Cornman,

III, Nicholas Poliansky and others, known and unknown to the grand jury, to unlawfully and

knowingly conduct financial transactions affecting interstate and foreign commerce, involving

the proceeds of a specified unlawful activity, namely, a conspiracy to distribute controlled

substances, in violation of Title 21, United States Code, Section 846, knowing that the

transactions were designed in whole and in part to conceal and disguise the nature, the location, the source, the ownership, and the control of the proceeds of the conspiracy to distribute controlled substances and knowing that the property involved in the financial transactions represented the proceeds of some form of unlawful activity, in violation of Title 18, United States Code, Section 1956(a)(1)(B)(i), and to avoid a transaction reporting requirement under state or federal law, in violation of Title 18, United States Code, Section 1956(a)(1)(B)(ii).

## OBJECTS OF THE CONSPIRACY

The objects of the money laundering conspiracy were to collect and spend money earned from the unlawful sale of controlled substances, primarily marijuana, in such a way as to avoid detection, seizure and forfeiture by the United States and to conceal the true nature, location, source, ownership and control of the drug proceeds.

## THE WAYS, MANNER AND MEANS OF THE CONSPIRACY

The ways, manner and means by which the defendant and his co-conspirators accomplished the conspiracy included the following:

1.      It was part of the conspiracy that the defendant knowingly accepted the proceeds of drug trafficking from a co-conspirator and helped the co-conspirator disguise the true source of the funds by investing cash drug proceeds in the purchase of real estate and assisting the co-conspirator in real estate transactions.

2.      It was further part of the conspiracy that co-conspirators were referred to the defendant's law firm for legal advice and representation in minor criminal and civil matters. Drug proceeds were sometimes used to pay the legal fees for these co-conspirators.

3.      It was further part of the conspiracy that the defendant was aware of co-

2

conspirators's drug trafficking activities and the defendant was willing to use his position as an attorney to assist drug traffickers in concealing and disguising the nature, the location, the source, the ownership, and the control of drug proceeds.

4.      It was further part of the conspiracy that the defendant knowingly accepted tens of thousands of dollars in drug proceeds from co-conspirators, some of which had been obtained from marijuana sales in the Eastern District of Virginia and elsewhere.

5.      It was further part of the conspiracy that the defendant conducted, or caused others to conduct, multiple transactions in the Eastern District of Virginia involving the use of financial institutions which are engaged in, or the activities of which affect, interstate or foreign commerce in some way or degree.

6.      It was further part of the conspiracy that the defendant made false statements and misrepresentations to others about the nature, the location, the source, the ownership and the control of drug proceeds of the conspiracy.

## OVERT ACTS

In furtherance of the conspiracy, and to effect the objects thereof, the defendant and his co-conspirators committed overt acts in the Eastern District of Virginia and elsewhere including, but not limited to, the following:

1.      On or about September 2, 2005, in Upper Marlboro, Maryland, the defendant, on behalf of Douglas Avenue, LLP, received $15,000 in drug proceeds from William Cornman III and executed a promissory note to Cornman for that amount.

2.      In and around 2005, the defendant discussed with Cornman incorporating a business through which Cornman could "legitimize" his drug proceeds.

3

3.      In and around 2005, Cornman hired an accountant recommended to him by the defendant and an unindicted co-conspirator based on their representation that he would not question Cornman about his business records and would assist Cornman in concealing his drug proceeds as legitimate assets on federal and state tax returns.

4.      On or about January 4, 2006, in Prince George's County, Maryland, an unindicted co-conspirator, on behalf of Douglas Avenue, LLP, received $5,000 in drug proceeds from Cornman and executed a promissory note to Cornman for that amount.

5.      In and around May 2006, in Owings, Maryland, an unindicted co-conspirator assisted Cornman in purchasing a residential property facing foreclosure in order to conceal and disguise the nature, the source, the location, the ownership and the control of Cornman's drug proceeds.

6.      In and around February of 2008, the defendant and an unindicted co-conspirator assisted Cornman in the purchase of a residential property in Clinton, Maryland, which was in foreclosure proceedings. The defendant appeared at the closing and represented the seller, the father of drug trafficker Joseph Tak, during the real estate transaction.

7.      In and around September 2008, and after the death of Cornman's younger brother and co-conspirator, Timmy, the defendant and Cornman conspired to create a "fake" will purporting to be that of Timmy Cornman in order to protect Cornman's drug assets, including the family residence, from a claim by Cornman's estranged mother.

8.      On or about September 11, 2008, the defendant forged Timmy Cornman's signature on a will that the defendant created after Timmy Cornman's death in July 2008, although the will purported to have been created on October 10, 2006.  The defendant filed, or

caused to be filed, this fraudulent will on September 16, 2008, with the Charles County, Maryland Register of Wills knowing that the will was fraudulent.

9.      In and around November 2008, in the Eastern District of Virginia, and elsewhere, the defendant retained and paid for defense counsel for William H. Cornman, III, and Joseph Tak with Cornman's drug proceeds in order to conceal the nature, the source, the location and the ownership of the drug proceeds from the government and to avoid seizure of those funds.

10.     On or about November 6, 2008, the defendant met with Nicholas Poliansky and directed him to collect outstanding drug debts owed to Cornman and to remit them to the defendant.

11.     On or about November 6, 2008, in Upper Marlboro, Maryland, the defendant deposited $17,000 in cash drug proceeds that he obtained from Nicholas Poliansky into the escrow account for the defendant's law firm, O'Brien, Young & Knowles, LLC. (OYK), at Bank of America.

12.     On or about November 6, 2008, the defendant caused one of his law partners to issue check #2784 in the amount of $5,000 from OYK's escrow account at Bank of America to an attorney to represent Cornman on federal drug conspiracy charges in the United States District Court for the Eastern District of Virginia.

13.     On or about November 7, 2008, the defendant caused his law partners to issue check #2785 in the amount of $1,500 from OYK's escrow account at Bank of America to an attorney from Virginia to act as local counsel for Cornman in the United States District Court for the Eastern District of Virginia.

14.     On or about November 10, 2008, the defendant received and accepted cash drug

5

proceeds that had been collected in the Eastern District of Virginia by an unindicted co-conspirator on behalf of Cornman.

15.     On or about November 11, 2008, in Upper Marlboro, Maryland, the defendant issued check #2786 in the amount of $10,000 to an attorney to represent Cornman in federal court.

16.     On or about November 13, 2008, in Upper Marlboro, Maryland, the defendant caused his law firm employee to deposit approximately $20,000 of Cornman's drug proceeds, that were delivered by Nick Poliansky and an unindicted co-conspirator, into the OYK escrow account at Bank of America.

17.     On or about November 13, 2008, in Upper Marlboro, Maryland, the defendant caused his other law partner to deposit approximately $5,000 of Cornman's drug proceeds, that were delivered by Nicholas Poliansky and an unindicted co-conspirator, into the OYK escrow account at Bank of America.

18.     On or about November 13, 2008, the defendant caused his law partner to issue check #2787 in the amount of $20,000 from OYK's escrow account at Bank of America to an attorney in Virginia to represent Joseph Tak on federal drug conspiracy charges in the United States District Court for the Eastern District of Virginia.

19.     On or about November 13, 2008, the defendant caused a retainer check in the amount of $20,000 to be delivered to an attorney in Alexandria, Virginia, for the defense of Joseph Tak.

20.     On or about November 14, 2008, in Alexandria, Virginia, within the Eastern District of Virginia, the defendant caused others to deposit check #2785, made payable to an

6

attorney in the amount of $1,500, from OYK's escrow account at Bank of America into an account at the Virginia Commerce Bank.

21.     On or about November 14, 2008, in McLean, Virginia, within the Eastern District of Virginia, the defendant caused others to deposit check #2787, issued on November 13, 2008 and made payable to an attorney in the amount of $20,000, from OYK's escrow account at Bank of America into an account at Branch Banking and Trust.

22.     On or about November 24, 2008, the defendant caused his law partner to issue check #2788 in the amount of $5,500 from OYK's escrow account at Bank of America to an attorney.

23.     On or about November 26, 2008, in McLean, Virginia, within the Eastern District of Virginia, the defendant caused others to deposit check #2788, issued on November 24, 2008 and made payable to an attorney in the amount of $5,500, from OYK's escrow account at Bank of America into an account at Branch Banking and Trust.

24.     On or about November 26, 2008, in Upper Marlboro, Maryland, the defendant caused to be filed with the Internal Revenue Service (IRS) two (2) IRS Form 8300's documenting the receipt of over $10,000 U.S. currency, which contained false statements and material omissions, in an attempt to conceal the nature of the cash transactions involving William Cornman's drug proceeds and the payments to defense counsel.

25.     In and around the end of November 2008, in Upper Marlboro, Maryland, the defendant transferred at least $10,000 in drug proceeds to one of his law partners in order to hide

and conceal the money and the defendant discussed burying the cash underground with that partner.

(All in violation of Title 18, United States Code, Section 1956(h).)

## COUNT TWO

### Money Laundering

The allegations in Count One of the indictment are re-alleged and incorporated by reference as though fully set forth herein.

On or about November 14, 2008, in the Eastern District of Virginia and elsewhere, the defendant, BRIAN W. YOUNG, did unlawfully and knowingly conduct financial transactions affecting interstate and foreign commerce, that is, causing others to deposit check #2785 from the defendant's law firm escrow account at Bank of America, issued on November 6, 2008 in the amount of $1,500, and deposited on or about November 14, 2008, at Virginia Commerce Bank, in Alexandria, Virginia, which involved the proceeds of specified unlawful activity, that is, a conspiracy to distribute controlled substances in the Eastern District of Virginia and elsewhere, in violation of Title 21, United States Code, Section 846, knowing that the transaction was designed in whole and in part to conceal and disguise the nature, the location, the source, the ownership, and the control of the proceeds of specified unlawful activity and that while conducting such financial transactions knew that the property involved in the financial transactions represented the proceeds of some form of unlawful activity.

(All in violation of Title 18, United States Code, Sections 1956(a)(1)(B)(i) and 2.)

## COUNT THREE

### Money Laundering

The allegations in Count One of the indictment are re-alleged and incorporated by reference as though fully set forth herein.

On or about November 14, 2008, in the Eastern District of Virginia and elsewhere, the defendant, BRIAN W. YOUNG, did unlawfully and knowingly conduct financial transactions affecting interstate and foreign commerce, that is, causing others to deposit check #2787 from the defendant's law firm escrow account at Bank of America, issued on November 13, 2008 in the amount of $20,000, and deposited on or about November 14, 2008, at Branch Banking and Trust, in McLean, Virginia, which involved the proceeds of a specified unlawful activity, that is, a conspiracy to distribute controlled substances in the Eastern District of Virginia and elsewhere, in violation of Title 21, United States Code, Section 846, knowing that the transaction was designed in whole and in part to conceal and disguise the nature, the location, the source, the ownership, and the control of the proceeds of specified unlawful activity and that while conducting such financial transactions, knew that the property involved in the financial transactions represented the proceeds of some form of unlawful activity.

(All in violation of Title 18, United States Code, Sections 1956(a)(1)(B)(i) and 2.)

## COUNT FOUR

### Money Laundering

The allegations in Count One of the indictment are re-alleged and incorporated by reference as though fully set forth herein.

On or about November 26, 2008, in the Eastern District of Virginia and elsewhere, the defendant, BRIAN W. YOUNG, did unlawfully and knowingly conduct financial transactions affecting interstate and foreign commerce, that is, causing others to deposit check #2788 from the defendant's law firm escrow account at Bank of America, issued on November 24, 2008 in the amount of $5,500, and deposited on or about November 26, 2008, at Branch Banking and Trust, which involved the proceeds of a specified unlawful activity, that is, a conspiracy to distribute controlled substances in the Eastern District of Virginia and elsewhere, in violation of Title 21, United States Code, Section 846, knowing that the transaction was designed in whole and in part to conceal and disguise the nature, the location, the source, the ownership, and the control of the proceeds of specified unlawful activity and that while conducting such financial transactions, knew that the property involved in the financial transactions represented the proceeds of some form of unlawful activity.

(All in violation of Title 18, United States Code, Sections 1956(a)(1)(B)(i) and 2.)

11

## FORFEITURE

Defendant BRIAN W. YOUNG is hereby on notice that, pursuant to Federal Rule of Criminal Procedure 32.2, if convicted of any of the counts charged in this Indictment, the defendant shall forfeit all property, real or personal, involved in the offense. This property includes, but is not limited to the following:

(a) a sum of money equal to $85,000.00 in United States currency, representing the amount of proceeds obtained as a result of the conspiracy to distribute controlled substances; and

(b) the defendant shall forfeit substitute property, up to the value of the forfeitable property described above (i.e., $85,000.00 in United States currency), if by any act or omission of the defendant, the $85,00.00 in United States currency, or any portion thereof:

      (1)     cannot be located upon the exercise of due diligence;

      (2)     has been transferred or sold to, or deposited with, a third party;

      (3)     has been placed beyond the jurisdiction of the Court;

      (4)     has been substantially diminished in value; or

      (5)     has been commingled with other property which cannot be divided without difficulty.

(Pursuant to Title 21, United States Code, Section 853 and Title 18, United States Code, Section 982.)

A TRUE BILL

Pursuant to the E-Government Act,
the original of this page has been filed
under seal in the Clerk's Office.

_____
FOREPERSON

NEIL H. MACBRIDE
UNITED STATES ATTORNEY

*Kimberly R. Pedersen*

Kimberly R. Pedersen
Karen P. Taylor
Assistant United States Attorneys

13